Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Nowles H. Heinrich
Assistant United States Attorneys
Post Office Box 1494
Spokane, Washington 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>       v.<br><br>ERUBEY ARCIGA MEDRANO (a/k/a "Wheto"),<br><br>                    Defendants. | Case No. 2:23-CR-00047-TOR-1<br><br>United States' Response to Defendant's Motion to Suppress Statements |

Defendant Erubey Arciga Medrano has filed a motion to suppress his statements to law enforcement. ECF No. 233. His claims, however, lack legal and factual merit, and the motion should be denied. As set forth in further detail herein, Medrano's statements to law enforcement were not elicited as a result of a custodial interrogation or its functional equivalent.

I.   **Statement of Facts**

The defendants are charged by Superseding Indictment with multiple drug offenses and a firearm offense. ECF No. 218. The charges are the result of an

United States' Response to Defendant's Motion to Suppress - 1

investigation that occurred in early 2023, when the Bureau of Indian Affairs ("BIA") identified defendant Medrano as a leader/organizer of a drug trafficking organization operating in the Orville, Washington area, as well as on the Colville Indian Reservation in Washington and the Crow Indian Reservation in Montana. Medrano and his father, Virgilio Arciga Galvan, were engaged in the large-scale distribution of methamphetamine and fentanyl in the Eastern District of Washington and elsewhere.

During the investigation, BIA, the Drug Enforcement Administration ("DEA"), Washington State law enforcement, and Colville Tribal law enforcement conducted a series of controlled buys, beginning in January 2023 through March 2023, from Medrano, Luis Esquivel-Bolanos (also known as "Colorado"), and other co-defendants selling drugs on their behalf. During some of the controlled buys, the confidential informant called a phone number associated with Medrano to arrange drug transactions. Other times, the informant traveled to 24 Swanson Mill Road to purchase controlled substances. For some of the controlled buys that did not occur at the Swanson Mill Road location, law enforcement conducted surveillance using a pole camera and observed the person that distributed drugs travel from 24 Swanson Mill Road prior to the transactions and returning to the location after conducting the transactions.

After obtaining a number of arrest warrants and search warrants, a takedown occurred on April 19, 2023, in both the District of Montana and the Eastern District of Washington. As a result of the takedown, numerous pounds of methamphetamine,

fentanyl, and other drugs were seized from property associated with Medrano, Galvan, Bolanos, and others. Medrano was arrested at 24A Swanson Mill Road during the morning of the takedown.

Following his arrest, Defendant Medrano, through counsel, requested an opportunity to review audio and video recordings relating to the investigation and to certain of the controlled buys. This review occurred on January 12, 2024, at the DEA's Spokane Office. To ensure Medrano would be able to review the materials in a secure environment, DEA and BIA transported Medrano from the Spokane County Jail to the DEA.

Following the meeting with his lawyer, DEA and BIA drove Medrano back to the Spokane County Jail. During this drive, Medrano engaged in conversation with DEA Task Force Agent Jose Acevedo. Specifically, TFA Acevedo asked Medrano "if it gets this cold in Mexico."[1] Medrano responded by looking back and asking whether TFA Acevedo spoke Spanish. When TFA Acevedo confirmed that he does indeed speak Spanish, Medrano affirmed that some parts of Mexico do get quite cold. Medrano then asked TFA Acevedo some background questions and inquired whether TFA Acevedo enjoyed working for the DEA and whether the DEA had encountered individuals from Mexico, who deal illegal drugs. When TFA Acevedo responded affirmatively, Medrano volunteered the following:

---

[1] On this particular morning, temperatures in Spokane were close to 0° Fahrenheit.

United States' Response to Defendant's Motion to Suppress - 3

> Life sometimes takes us down the wrong path, and for many people like me, the need to provide for our families forces us down this path; nevertheless, we are all just pawns in this game.

Exhibit A at 2 (*available at* Bates 00000069).

## II. Defendant's Motion to Suppress Should be Denied.

Medrano now seeks to suppress his statements by arguing that the DEA agents who drove him to and from the jail did not explain his *Miranda* rights prior to "interrogating" Medrano. ECF No. 233 at 2. In his motion, however, Medrano mischaracterizes the nature of his conversation with DEA. Medrano's incriminating statements were made freely after Medrano engaged law enforcement in a conversation about the DEA. None of the statements Medrano seeks to suppress were made in response to police interrogation.

It is well-established that "*Miranda* safeguards come into play" only when "a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Interrogation, for purposes of *Miranda*, includes direct questioning as well as "statement[s] or conduct, which the police should know is 'reasonably likely to elicit an [inculpatory or exculpatory] response from the suspect.'" *Shedelbower v. Estelle*, 885 F.2d 570, 573 (9th Cir. 1989). In *Shedelbower*, for example, the defendant, who later was convicted of rape and murder, invoked his *Miranda* rights during a police interview. *Id.* at 572. Shortly after he invoked, police falsely told the defendant that the victim of the sexual assault had identified him as her rapist. *Id.* at 572. Later that evening, the defendant

United States' Response to Defendant's Motion to Suppress - 4

reengaged officers and made a full confession. *Id.* On appeal, the Ninth Circuit concluded that the officer's statement about the victim's identification was not the functional equivalent of interrogation for purposes of *Miranda*. *Id.* at 573.

When evaluating whether questions or statements arise to the level of police "interrogation," the Ninth Circuit has explained that the "gathering of background biographical information, such as identity, age, and address, usually does not constitute interrogation." *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006); *see also United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981) (ruling that innocuous questions that are "not related to the crime or the suspect's participation in it" typically do not constitute interrogation). Courts in the Ninth Circuit have further held that "small talk" – which, according to at least one court, includes discussions about the weather – does not rise to the functional equivalent to interrogation, unless such small talk was "reasonably likely to elicit responses that could be helpful to the prosecution at trial." *United States v. Farber*, No. CR13–0221–PHX–DGC, 2013 WL 2896857 at *2 (D. Ariz. 2013).

In this case, DEA engaged in "background" and "small talk" about the weather in Mexico. Medrano responded and then changed the topic by asking questions about the DEA, including whether agents had encountered drug dealers from Mexico. Medrano engaged in this line of questioning – not the police. It was Medrano who then stated, without any prompting and without any questioning, that "for many people like me, the need to provide for our families forces us down this path." *See*

United States' Response to Defendant's Motion to Suppress - 5

Exhibit A at 2. It was Medrano who added that he, and others like him, are "just pawns in this game." *Id.* Because Medrano statements were not made in reply to any police questioning or statements designed to illicit an incriminating response, there was no interrogation for purposes of *Miranda*.[2] None of TFA Acevedo's questions were "reasonably likely to elicit responses that could be helpful to the prosecution at trial."

Medrano's reliance on *United States v. Orso*, 234 F.3d 436 (9th Cir. 2000) is unavailing. In that case, and prior to issuing *Miranda* warnings, the police – not the defendant – brought up the alleged crime and outlined certain of the evidence against the defendant. *See* 234 F.3d at 438. The officer's also made statements insinuating that the defendant should cooperate. On appeal, the Ninth Circuit ruled that the officer's statements were designed to elicit an incriminating response, constituting custodial interrogation. *See id*. at 438-39. Unlike in *Orso*, the DEA here did not bring up the crime and did not reference any of the evidence against Medrano. Rather, the DEA

---

[2] In his motion, Medrano attempts to characterize the conversation as arising from questions about Medrano's time in custody. *See* ECF 233 at 2 (referencing questions regarding "life at the Spokane County jail" and about "Sea-Tac."). The DEA report outlining the conversation, however, makes clear the conversation about his incarceration occurred *after* Medrano made statements implying that he distributed drugs to provide for his family. *See generally* Ex. A.

Regardless of this clear sequence, TFA Acevedo's questions about the jail likewise do not constitute interrogation. TFA Acevedo simply asked about Medrano's background and living conditions at the Spokane County Jail. *See Washington*, 462 F.3d at 1132. Such questions were not interrogatory; nor did such questions elicit an incriminatory response. *See* Ex. A. Moreover, the United States does not anticipate eliciting in its case in chief the specific statements Medrano made in connection with the conversation about the Spokane County jail. Ex. A at 2 (i.e., Medrano's statements about faith, bible study, and his exercise routine at the jail).

United States' Response to Defendant's Motion to Suppress - 6

asked an innocuous question about the weather during the short car ride from the DEA office to the Spokane County jail. Such questions fall far short of the interrogation that occurred in *Orso*.[3]

## Conclusion

Defendant Medrano's motion to suppress statements lacks legal and factual support. The United States requests that Defendant's motion be denied.

Dated: July 29, 2024.

                                            Vanessa R. Waldref
                                            United States Attorney

                                            *s/Rich Barker*
                                            Richard R. Barker
                                            First Assistant United States Attorney

                                            *s/Nowles H. Heinrich*
                                            Nowles H. Heinrich
                                            Assistant United States Attorney

---

[3] The *Orso* opinion on which *Medrano* relies ultimately was vacated and the case was reheard *en banc* by the Ninth Circuit. *See United States v. Orso*, 266 F.3d 1030, (9th Cir. 2001). The Supreme Court later abrogated the *en banc* decision in *Missouri v. Seibert*, 542 U.S. 600 (2004). Whatever the precedential value of the original opinion in *Orso*, the facts of that case are significantly different than those presented here.

United States' Response to Defendant's Motion to Suppress - 7

# CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to counsel of record.

*s/Rich Barker*
Richard R. Barker
First Assistant United States Attorney

United States' Response to Defendant's Motion to Suppress - 8