Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Nowles Heinrich
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 06 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERUBEY ARCIGA MEDRANO,<br><br>Defendant. | Case No. 2:23-CR-47-TOR-1<br><br>Fed. R. Crim. P. 11(c)(1)(C)<br>PLEA AGREEMENT |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Richard R. Barker and Nowles Heinrich, Assistant United States Attorneys for the Eastern District of Washington, and Defendant, ERUBEY ARCIGA MEDRANO ("Defendant"), both individually and by and through Defendant's counsel, Thomas D. Church, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees to enter a plea of guilty to Count 1 of the Superseding Indictment filed on May 9, 2024, charging Defendant with Conspiracy to Distribute 50 Grams or More of Actual (Pure) Methamphetamine and 400 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl,

PLEA AGREEMENT - 1

all Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (viii), and 846.

Defendant understands that the following potential penalties apply:

    a. a term of imprisonment of not less than 10 years and up to life;

    b. a term of supervised release of not less than 5 years and up to a lifetime;

    c. a fine of up to $10,000,000;

    d. denial of federal benefits; and

    e. a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>Denial of Federal Benefits</u>:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a. pleading guilty in this case may have immigration consequences;

    b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. sentencing is a matter solely within the discretion of the Court;

    b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f. Defendant understands that this Plea Agreement contains sentencing recommendations pursuant to Fed. R. Crim. P. 11(c)(1)(C). As a result, the United States may withdraw from this Plea Agreement if the Court imposes a lesser sentence than agreed upon, and Defendant may withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

6. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a). The right to a jury trial;

    (b). The right to see, hear and question the witnesses;

    (c). The right to remain silent at trial;

(d). The right to testify at trial; and

(e). The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted by an attorney through the sentencing and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. <u>Elements of the Offense</u>:

The United States and Defendant agree that in order to convict Defendant of Count One, Conspiracy to Distribute 50 Grams or More of Actual (Pure) Methamphetamine and 400 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, all Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (viii), and 846, the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on a date unknown, but by January 3, 2023, and continuing until on or about April 19, 2023, within the Eastern District of Washington, Defendant, ERUBEY ARCIGA MEDRANO, entered into an agreement with one or more persons to commit the crime of Distribution of Methamphetamine and Fentanyl, as charged in the Superseding Indictment;

*Second*, Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

*Third*, the agreement was to distribute 50 grams or more of actual (pure) methamphetamine and 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide

PLEA AGREEMENT - 5

(a/k/a fentanyl), each of which was reasonably foreseeable to Defendant as a member of the conspiracy.

8. <u>Statement of Facts</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea and it does not contain all facts which could be proven by the United States. The stipulation also does not contain each and every fact known to Defendant concerning his involvement and the involvement of others in the charges set forth in the Superseding Indictment.

**Background**

By January 2023, Bureau of Indian Affairs ("BIA") identified Defendant Erubey Arciga MEDRANO, aka "Wheto," as a leader/organizer for a drug trafficking organization operating in the Orville, Washington area, on the Colville Indian Reservation, and on the Crow Indian Reservation in Montana. Defendant MEDRANO, co-defendant Luis Esquivel-BOLANOS (also known as "Colorado"), and Defendant's father, Virgilio Arciga GALVAN, were engaged in the large-scale distribution of methamphetamine and fentanyl in the Eastern District of Washington and elsewhere. A takedown occurred on April 19, 2023, in both the District of Montana and the Eastern District of Washington. As a result of the takedown, numerous pounds of methamphetamine, fentanyl, and other drugs were

removed from the Oroville community and seized from property associated with Defendant MEDRANO, GALVAN, co-defendant BOLANOS, and others.

During the investigation, BIA, the Drug Enforcement Administration ("DEA"), Washington State law enforcement, and Colville Tribal law enforcement conducted a series of controlled buys, beginning in January 2023 through March 2023 from Defendant MEDRANO, co-defendant BOLANOS, and individuals selling drugs on their behalf. The investigation revealed that Defendant MEDRANO and BOLANOS exercised control over the Washington portion of the drug trafficking operation. GALVAN primarily oversaw transportation of controlled substances to and within the Crow Indian Reservation in Montana. Others, including co-defendants Leonardo Herrera LOPEZ, Chad VANATTA, Jeremy WRIGHT, and Emily WISDOM distributed methamphetamine and fentanyl on behalf of Defendant MEDRANO and co-defendant BOLANOS. During the course of the conspiracy, Defendant MEDRANO and his co-conspirators distributed over 50 grams of actual (pure) methamphetamine and over 400 grams of fentanyl.

The drugs distributed by the MEDRANO drug trafficking organization in Washington had been transported from California to Washington. Some of the drugs were then transported from Washington to Montana, where they were distributed by GALVAN's operation within and around the Crow Indian Reservation. A portion of the drugs also went straight from California to Montana.

**MEDRANO's Distribution of Methamphetamine on January 25, 2023**

On January 25, 2023, the investigation team conducted a controlled buy from the MEDRANO drug trafficking organization, utilizing a confidential informant. Specifically, the informant travelled to 24-B Swanson Mill Road, Oroville, Washington, and entered the trailer at the location. Defendant MEDRANO, through an interpreter, questioned the informant about rumors that the informant was a "snitch." After discussing the issue further, MEDRANO directed the

PLEA AGREEMENT - 7

informant to contact co-defendant VANATTA for future drug purchases. Before the informant left, MEDRANO provided the informant a plastic bag containing suspected methamphetamine.

Upon completion of the meeting, investigators met with the informant and collected the methamphetamine. These events all occurred within the Eastern District of Washington.

The DEA's laboratory has tested the methamphetamine from the controlled buy and determined it contains approximately 23.6 grams of actual (pure) methamphetamine, a Schedule II controlled substance.

### March 7, 2023 Controlled Buy of Methamphetamine from MEDRANO and LOPEZ

On March 7, 2023, the investigation team conducted another controlled buy from the MEDRANO drug trafficking organization utilizing a confidential informant. The informant called MEDRANO and requested to purchase four ounces of methamphetamine. MEDRANO instructed the informant to meet co-defendant LOPEZ at a store in Oroville, Washington to purchase the four ounces of methamphetamine.

The informant met LOPEZ at the designated location in Oroville and successfully purchased methamphetamine from LOPEZ. These events all occurred within the Eastern District of Washington.

The DEA's laboratory has tested the methamphetamine from the controlled buy and determined it contains approximately 108 grams of actual (pure) methamphetamine, a Schedule II controlled substance.

### April 19, 2023 Search Warrant and Arrest of MEDRANO

On April 19, 2023, search warrants were executed at locations around Oroville. During the execution of search warrants, BIA, DEA, and their law enforcement partners recovered large quantities of illegal controlled substances from premises associated with Defendant MEDRANO, GALVAN, and

PLEA AGREEMENT - 8

BOLANOS. This included fentanyl pills, methamphetamine, heroin, and cocaine. In total, law enforcement seized approximately 161,000 fentanyl pills (to include "Mexi-blues" and rainbow-colored pills), approximately 80 pounds of methamphetamine, approximately 6 pounds of heroin, and approximately 2.2 pounds of cocaine. Law enforcement also seized approximately 12 firearms and approximately $6,600 in U.S. currency. Many of the firearms and a portion of the drugs were found in or around 24-B Swanson Mill Road, where Defendant MEDRANO frequented and had previously distributed drugs. MEDRANO was arrested pursuant to a federal arrest warrant inside of 24-A Swanson Mill Road, a trailer adjacent to the trailer on 24-B Swanson Mill Road.

Defendant MEDRANO was aware of the extent of the drug trafficking operation and had knowledge of the narcotics and firearms seized on April 19, 2023 (e.g., the drugs and firearms recovered from in and around the trailers on 24 Swanson Mill Road and from the picker cabins).

9. <u>The United States' Agreements</u>

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving the illegal activity charged in the Superseding Indictment, unless Defendant breaches this Plea Agreement before sentencing. The United States further agrees to dismiss any remaining counts charged against Defendant in the Superseding Indictment filed on May 9, 2024.

10. <u>United States Sentencing Guideline Calculations:</u>

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

PLEA AGREEMENT - 9

a. *Base Offense Level and Application of Relevant Conduct*:

The parties agree and stipulate that more than 90,000 kilograms of converted drug weight[1] was distributed and possessed with the intent to further the criminal activity jointly undertaken by Defendant and his co-conspirators; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3.

Therefore, the parties agree to recommend Defendant's Base Offense Level is 38. *See* USSG §2D1.1(a)(5).

b. *Special Offense Characteristics*:

The parties agree that Defendant is not eligible for application of the safety valve provisions of 18 U.S.C. § 3553(f) and USSG §5C1.2. The United States and Defendant further agree that Defendant's base offense level is increased by two levels because Defendant possessed a dangerous weapon (firearm). *See* USSG §2D1.1(b)(1). The United States and Defendant also agree that Defendant's base offense level is increased by an additional two levels because Defendant maintained a premises for the purpose of distributing a controlled substance. *See* USSG §2D1.1(b)(12).

c. *Role Adjustments*:

The United States and Defendant agree that Defendant was a manager or supervisor of criminal activity involving five or more participants and which was extensive, and therefore Defendant should receive a three-level increase in his offense level pursuant to USSG §3B1.1(b).

d. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG

---

[1] The parties are recommending the use of the Drug Equivalency Table pursuant to USSG §2D1.1 note 8.

PLEA AGREEMENT - 10

§3E1.1(a), (b), if Defendant does the following:

    i. accepts this Plea Agreement;

    ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv. provides complete and accurate information during the sentencing process; and

    v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    e. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, pursuant to the 11(c)(1)(C) agreement as set forth below, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

    f. *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed.

PLEA AGREEMENT - 11

11. <u>Length of Incarceration</u>:

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case is a term of incarceration within the range of at least 120 months (10 years) but not more than 192 months (16 years) based on the totality of the circumstances, to include the 18 U.S.C. § 3553(a) factors and Defendant's mitigating information, which Defendant will present to the Court at the time of sentencing.

Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement, as well as withdraw his guilty plea, if the Court imposes a term of imprisonment of greater than 192 months or indicates its intent to do so. Defendant further understands the United States may withdraw from the Plea Agreement if the Court imposes a term of incarceration of less than 120 months.

The United States and Defendant acknowledge that the imposition of any supervised release, fine, or restitution are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or length and conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or length and conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

12. <u>Supervised Release</u>:

The United States and Defendant each agree to recommend five (5) years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

> (a). Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and
>
> (b). The United States Probation Office may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, office, vehicles, belongings, and areas under Defendant's exclusive or joint control.

13. <u>Criminal Fine</u>:

The United States and Defendant have made no agreement and make no representations as to the Court's potential imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. **Mandatory Special Penalty Assessment:**

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. **Property Disposal**

Defendant does not claim an interest in the below-listed firearms and does not oppose the firearms' disposal by destruction or return to a legitimate owner(s) by the DEA or designated agency:

- a Ruger Model Super Redhawk Alaskan .44 Magnum caliber pistol, bearing serial number 53025441;
- a SCCY Model CPX-2 9mm caliber pistol, bearing serial number C319555;
- a Sears .22 caliber rifle, bearing serial number 79476;
- an Armeria Concari .300 Winchester Magnum caliber rifle, bearing serial number 0115;
- a Winchester .280 Ackley caliber rifle, bearing serial number 405417;
- a Ruger .357 caliber revolver, bearing serial number 51126254; and,
- a Ruger .357 caliber revolver, bearing serial number 57507552.

Defendant agrees to hold all law enforcement and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and disposal of any assets covered by this agreement.

16. **Payments While Incarcerated:**

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17. **Additional Violations of Law Can Void Plea Agreement:**

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT - 14

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives Defendant's right to appeal Defendant's conviction and/or sentence. Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. this Plea Agreement shall become null and void;

    b. the United States may prosecute Defendant on all available charges;

    c. the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

PLEA AGREEMENT - 15

    d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Waiver of Attorney Fees and Costs</u>:

Defendant agrees to waive all rights Defendant may have under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement or any charges previously dismissed or not brought as a result of this Plea Agreement).

21. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

PLEA AGREEMENT - 16

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_/s/ Nowles H-W_   AUSA Heinrich for:                         11/6/2024
Richard R. Barker                                              Date
First Assistant U.S. Attorney

_/s/ Nowles H_                                                 11/6/2024
Nowles Heinrich                                                Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in

PLEA AGREEMENT - 17

any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_Erubey Arciga_      _11-06-24_
ERUBEY ARCIGA MEDRANO     Date
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I have further advised my client by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_/s/ T. Church_      _11/6/24_
Thomas D. Church, Esq.     Date
Attorney for the Defendant

PLEA AGREEMENT - 18